UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICHARD CARL ELKINS,

       Petitioner,

v.                         Case No:  2:17-cv-286-FtM-29MRM

SECRETARY, DOC,

       Respondent.

_____

**OPINION AND ORDER**

Petitioner Richard Carl Elkins (petitioner or Elkins), represented by counsel, filed a Petition for Writ of Habeas Corpus By a Person in State Custody Under 28 USC § 2254. (Doc. #1, Petition).  Elkins, a Florida prisoner, challenges his convictions for the first-degree premeditated murder of Obed Flores-Fuentes and a lesser included offense of battery, entered by the Twentieth Judicial Circuit Court in and for Lee County in Case No. 07-CF-015298. (Doc. #1, p. 2; Doc. #9, p. 2.)  Elkins asserts that the state court's denial of a motion to suppress a post-arrest statement made to detectives at the sheriff's office was contrary to federal law and/or based upon an unreasonable determination of certain facts. (Doc. #1, pp. 11-14.)  Respondent filed a Response (Doc. #9, Response) which included the state court record (Docs. ## 11-15), and  Elkins filed a Reply. (Doc. #18).  For the reasons set forth below, the Petition for Writ of Habeas Corpus is denied.

## I.    Applicable Federal Habeas Corpus Principles

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The AEDPA requires a state prisoner seeking federal habeas relief to first "exhaus[t] the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A). If the state courts do not adjudicate the prisoner's federal claim "on the merits," a *de novo* standard of review applies in the federal habeas proceeding; if the state courts do adjudicate the claim on the merits, then the AEDPA mandates a deferential, rather than *de novo*, review.  Kernan v. Hinojosa, 136 S. Ct. 1603, 1604 (2016).

This deferential standard is set forth in § Section 2254(d), which provides:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—"
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   This standard is both mandatory and intentionally difficult to satisfy.   Sexton v. Beaudreaux, 585 U.S. ___, 138 S. Ct. 2555, 2558 (2018); White v. Woodall, 572 U.S. 415, 419 (2014).

"Clearly established federal law" consists of the governing legal principles in the decisions of the United States Supreme Court when the state court issued its decision.   White, 572 U.S. at 419.   Habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1).   A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Mitchell v. Esparza, 540 U.S. 12, 16 (2003); Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or

- 3 -

unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406.)  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011). See also Nance v. Warden, Ga. Diagnostic Prison, 922 F.3d 1298, 1301 (11th Cir. 2019) ("To justify federal habeas relief, the state court's decision must be so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.")(internal quotation marks omitted).

When reviewing a claim under § 2254(d), any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Burt v. Titlow, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting Wood v. Allen, 558 U.S. 290, 293 (2010)). See also Morrow v. Warden, 886 F.3d 1138, 1146 (11th Cir. 2018) (the court must presume that the State court's determination of a factual issue is correct, and petitioner must rebut presumption by clear and convincing evidence).

For the deferential § 2254(d) standard to apply there must

have been an "adjudication on the merits" in state court.  An adjudication on the merits does not require there be an opinion from the state court explaining the state court's reasoning. Harrington v. Richter, 562 U.S. 86, 98 (2011).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99.  "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Richter, 562 U.S. at 99–100. This presumption applies whether the state court fails to discuss the claims or discusses some claims but not others. Johnson v. Williams, 568 U.S. 289, 293, 298-301 (2013).

While such a decision is an "adjudication on the merits," the federal habeas court must still determine the state court's reasons for its decision in order to apply the deferential standard.  When the relevant state-court decision on the merits is not accompanied by its reasons,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's

> decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).  The federal court "looks through" the silent state court decision "for a specific and narrow purpose—to identify the grounds for the higher court's decision, as AEDPA directs us to do."  Id. 138 S. Ct. at 1196.

## II.  Timeliness, Exhaustion, and Evidentiary Hearing

Respondent concedes that the Petition is timely and that the claim for relief was properly exhausted.  (Doc. #9, pp. 8, 11; Doc. #18, p. 1.)  Petitioner does not request an evidentiary hearing, and the Court finds the facts are well-developed in the record, so an evidentiary hearing is not otherwise warranted. Schriro v. Landrigan, 550 U.S. 465, 474 (2007);28 U.S.C. § 2254(e)(2).

## III. Factual and Procedural Overview

On June 15, 2007, a grand jury in Lee County, Florida indicted Elkins for the February 28, 2007, death of Obed Flores-Fuentes (Flores-Fuentes).  Elkins was indicted for premeditated murder while engaged in an attempt to perpetrate a sexual battery by striking Flores-Fuentes in the head and neck with a shovel or other blunt object (Count I), and for committing a sexual battery upon Flores-Fuentes without his consent by force and in the process of

using or threatening use of a deadly weapon or actual physical force likely to cause injury (Count II). (Doc. #11-1, Exh. 1, Indictment.)

On August 19, 2010, Elkins filed a Motion to Suppress Statement (Doc. #11-1, Exh. 2) in the trial court. The motion sought to suppress all written and oral statements obtained from petitioner by the police or other State agents on the grounds that Elkins was arrested without probable cause, the statements were not freely and voluntarily given, and his Miranda[1] rights waiver was not free and voluntary.

On October 7, 2010, an evidentiary hearing on the motion was held before the Honorable Margaret Steinbeck, Circuit Court Judge. (Doc. #2-1, Exh. 1.) Defense counsel clarified that the suppression motion challenged two custodial statements made by Elkins: (1) a statement made in a police car while Elkins was being transported to the Sheriff's office; and (2) a statement made to detectives during interrogation at the Lee County Sheriff's office. (Doc. #2-1, Exh. 1, p. 24.)[2] As discussed in more detail below, the motion to suppress was denied in material respects.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] Where available, the citations to individual page numbers refer to the original page numbers on the exhibits and transcripts.

The case proceeded to jury trial on October 25 through 28, 2010. (Doc. #11-1, Exh. 5.) On October 28, 2010, a jury returned guilty verdicts of first degree murder as to Count I and the lesser-included offense of battery as to Count II. (Doc. #14-1, Exh. 6.) Elkins was sentenced to life imprisonment on the murder conviction and time-served on the battery conviction. (Doc. #14-1, Exh. 7.)

On November 8, 2010, Elkins filed a timely direct appeal. Through appointed counsel, Elkin raised three issues on direct appeal. Appellate counsel summarized the relevant claim as follows:

> ISSUE I
>
> The trial court committed reversible error by denying the appellant's motions to suppress his confessions. The appellant's warrantless arrest in the curtilage of the residence or screened lanai of the house was unlawful, and the resulting confessions should be suppressed as fruits of his unlawful arrest. Moreover, the defendant was too intoxicated to understand the warning and waive his rights.

(Doc. #14-1, Exh. 8, p. 352.) The State filed an Answer Brief (Doc. #15-1, Exh. 9.) The Second District Court of Appeal *per curiam* affirmed the convictions and sentences. Elkins v. State, 88 So. 3d 941 (Fla. 2d DCA 2012).[3]

---

[3] Although not relevant to the § 2254 petition before the Court, Elkins filed a post-conviction motion under Florida Rule of Criminal Procedure 3.850, raising three grounds of ineffectiveness of counsel. (Doc. #15-1, Exh. 11.) The State filed a Response,

## IV.   Section 2254 Issues and Analysis

### A. State Court Order on Motion to Suppress

On October 18, 2010, after an evidentiary hearing, the state trial court issued its written Order Denying (In Part) Motion to Suppress. (Doc. #2-4, Exh. 4.)  The state court made the following findings of fact:

> At approximately 7 a.m. on February 28, 2007, Detective Ryan of the Lee County Sheriff's Office (LCSO) arrived at a crime scene behind a shopping center near the intersection of Bonita Beach Road and Highway 41 in Lee County.  Earlier that morning, LCSO had received a "911" call from a worker who reported the discovery of a body in that location.  Detective Ryan was assigned as the lead detective to investigate.  He observed the nude and battered body of the decedent, a Hispanic male, later identified as Obed Flores.  Detective Ryan also observed blood spatter on the walls of the shopping center.
>
> Within hours, Detective Ryan learned that an individual named Christopher Maner had called the Sheriff's office to report that he had information about the case, Detective Ryan met with Mr. Maner at Mr. Maner's residence and took a statement from him.
>
> In that statement, Mr. Maner related that he and his friend, Richard Elkins (the Defendant), had been at a bar in the shopping center the night of February 27-28, 2007, drinking and playing pool.  Mr. Maner said that at one point in the evening he and the

---

and Elkins filed a Reply.  (Id., Exhs. 12, 13.)  On July 31, 2015, an Order Denying Defendant's 3.850 Motion (Doc. #15-1, Exh. 14) was issued by the State Circuit Court.  On April 1, 2016, the Second District Court of Appeals per curiam affirmed the decision. Elkins v. State, 209 So. 3d 578 (Fla. 2d DCA 2016).  The Mandate issued on July 20, 2016.  (Doc. #15-1, Exh. 15.)

Defendant went outside, behind the bar, to smoke marijuana.  Mr. Maner said they were approached outside by an unknown Hispanic male and they offered to smoke with him.  At some point, the Defendant and the unknown Hispanic male had a physical altercation and the Defendant knocked the Hispanic male unconscious.  Mr. Maner and the Defendant went back into the bar and paid their tab.  As they were leaving, the Defendant reportedly told Mr. Maner that he was going to "finish [the Hispanic male] off."  According to Mr. Maner, they exited out the back door.  The Defendant got a shovel and beat the Hispanic male with it.  Mr. Maner and the Defendant then reportedly left the shopping center on foot.

Mr. Maner told Detective Ryan that the Defendant discarded the shovel on the south side of Bonita Beach Road, hiding it in shrubs.  The Defendant and Mr. Maner walked to a friend's house nearby, where they both went to sleep.  Mr. Maner woke up and walked home, leaving the Defendant there sleeping.

Mr. Maner led Detective Ryan to the location where he claimed the shovel was discarded, and Detective Ryan recovered a shovel.  The shovel appeared consistent with the injuries Detective Ryan observed on the body of Mr. Flores.

Mr. Maner then took Detective Ryan to the friend's house (which was a short walking distance from the shopping center) where he said he had left the Defendant sleeping earlier that morning.  Additional law enforcement units were called to the scene. Sometime before noon, the Defendant was arrested at the friend's house.

At the time of the arrest, the Defendant was discovered on a screened lanai (approximately 10 feet wide by 15 feet long) at the back side of the house, in the company of an unknown female.  The officers, some in plain clothes and some in uniform, walked around to the back side of the house and

clearly observed the Defendant on the lanai. The Defendant did not resist in any way and was arrested (handcuffed and placed in the back of Detective Craven's patrol car for transport) without incident.

Detective [Craven] and an LCSO trainee transported the Defendant from the residence where he was arrested to the LCSO headquarters. The Defendant was not interviewed before being placed in the patrol car and he was not advised of his *Miranda* rights at that time. The conversations in the patrol vehicle during the transport of the Defendant to the LCSO headquarters were recorded on an audio recording. A copy of the recording was introduced as part of State's Exhibit 1.

During the transport to the LCSO headquarters, in response to an inquiry as to whether he was "all right back there," the Defendant asked when he could give his confession. Without waiting for an answer, the Defendant then blurted out his version of the confrontation with Mr. Flores. In response, after asking the Defendant his name, Detective Craven told the Defendant that they were taking the Defendant to the Major Crimes Unit at the LCSO, where the Defendant would talk to "the detective." Other than asking how old the Defendant was, and whether he needed air or was otherwise okay, there was little or no conversation between the Defendant and the officers during the rest of the trip.

At approximately 2:25 p.m., February 28, 2007, the Defendant was interviewed by Detective Ryan and Detective Mike Carr at the LCSO headquarters. That interview was recorded and the audio recording was introduced as part of State's Exhibit 1. There were no threats or promises made by the Detectives to the Defendant before the recording and no statements made after the recording.

> At the beginning of the recorded interview, Detective Ryan read the Defendant his rights pursuant to *Miranda* and the Defendant acknowledged his understanding and stated that he wished to talk to the Detectives. As stated above, the entire recorded conversation was introduced into evidence and there is no need to summarize or describe it here.

(Doc. #2-4, Exh. 4, pp. 1-3.)  These factual determinations are amply supported by the record at the suppression hearing.  In any event, neither party challenges these factual findings by the state court judge.

In relevant part, the state court concluded that: (1) Elkin knowingly and intelligently waived his Fifth Amendment privilege and his right to counsel, and chose to speak with the officers at the Sheriff's office; (2) probable cause to arrest Elkin was established, despite the possible self-serving nature of Mr. Maner's statements prior to his own arrest; (3) for various reasons, Elkins' warrantless arrest did not violate Payton v. New York, 445 U.S. 573 (1980); (4) Elkin had no reasonable expectation of privacy in the back of the patrol car during transport to the LCSO headquarters, Elkins' initial statements in the vehicle were spontaneous, and therefore not a Miranda violation, but the other statements made during the ride were technically in response to questions, and therefore those statements were suppressed because no Miranda warnings had been given; and (5) the State had carried

its burden of showing that Elkins' statements were freely and voluntarily given. (Doc. #2-4, Exh. 4, pp. 4-5.)

**B. Petitioner's § 2254 Claims**

In the § 2254 proceeding, petitioner challenges only the state court's determination that the statement given at the Sheriff's office was admissible.  As to this statement, petitioner asserts that the State Court's determinations that Elkins had waived his Miranda rights and that the statement was given freely and voluntarily were contrary to and an unreasonable application of clearly established federal law, and were based on an unreasonable determination of certain facts.  (Doc. #1, pp. 1-14.)[4]

Florida's Second District Court of Appeal affirmed the trial court's denial of the motion to suppress without written opinion. (Doc. #15-1, Exh. 10).  Therefore, as discussed earlier, a federal habeas court "looks through" the Florida appellate court's *per curiam* order, presumes the unexplained appellate order adopted the reasoning of the trial court's post-conviction decision, and evaluates that postconviction decision.  Wilson, 138 S. Ct. at 1192.  Accordingly, the focus of the § 2254 petition is the Order entered by Judge Steinbeck denying the motion to suppress.

---

[4] The § 2254 petition does not challenge the existence of probable cause to arrest petitioner.

**(1) Petitioner's Waiver of <u>Miranda</u> Rights**

Petitioner argues that the state trial judge failed to properly apply well-established federal law to determine whether he had waived his <u>Miranda</u> rights, relying largely on <u>Moran v. Burbine</u>, 475 U.S. 412 (1986).  Petitioner asserts that the waiver of <u>Miranda</u> rights must be both voluntary and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  (Doc. #1, p. 12, quoting <u>Burbine</u>, at 421.)  Elkins argues that the state court ignored the second prong and added a reliability analysis instead, and therefore the decision was contrary to clearly established federal law within the meaning of § 2254(d)(1).  (<u>Id.</u>, pp. 13-14.)

The Supreme Court discussed the waiver of <u>Miranda</u> rights at some length in <u>Berghuis v. Thompkins</u>:

> Even absent the accused's invocation of the right to remain silent, the accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused "in fact knowingly and voluntarily waived <u>Miranda</u> rights" when making the statement. <u>Butler</u>, 441 U.S. at 373, 99 S. Ct. 1755. The waiver inquiry "has two distinct dimensions": waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." <u>Burbine</u>, *supra* at 421, 106 S. Ct. 1135.
>
> . . . .

- 14 -

The course of decisions since _Miranda_, informed by the application of _Miranda_ warnings in the whole course of law enforcement, demonstrates that waivers can be established even absent formal or express statements of waiver that would be expected in, say, a judicial hearing to determine if a guilty plea has been properly entered. _Cf._ Fed. R. Crim. P. 11. The main purpose of _Miranda_ is to ensure that an accused is advised of and understands the right to remain silent and the right to counsel. _See_ _Davis_, supra at 460, 114 S. Ct. 2350; _Burbine_, _supra_ at 427, 106 S. Ct. 1135. Thus, "[i]f anything, our subsequent cases have reduced the impact of the _Miranda_ rule on legitimate law enforcement while reaffirming the decision's core ruling that unwarned statements may not be used as evidence in the prosecution's case in chief." _Dickerson v. United States_, 530 U.S. 428, 443–444, 120 S. Ct. 2326, 147 L.Ed.2d 405 (2000).

One of the first cases to decide the meaning and import of _Miranda_ with respect to the question of waiver was _North Carolina v. Butler_. The _Butler_ Court, after discussing some of the problems created by the language in _Miranda_, established certain important propositions. _Butler_ interpreted the _Miranda_ language concerning the "heavy burden" to show waiver, 384 U.S. at 475, 86 S. Ct. 1602, in accord with usual principles of determining waiver, which can include waiver implied from all the circumstances. _See_ _Butler_, _supra_ at 373, 376, 99 S. Ct. 1755. And in a later case, the Court stated that this "heavy burden" is not more than the burden to establish waiver by a preponderance of the evidence. _Colorado v. Connelly_, 479 U.S. 157, 168, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986).

The prosecution therefore does not need to show that a waiver of _Miranda_ rights was express. An "implicit waiver" of the "right to remain silent" is sufficient to admit a suspect's statement into evidence. _Butler_,

supra at 376, 99 S. Ct. 1755. Butler made clear
that a waiver of Miranda rights may be implied
through "the defendant's silence, coupled with
an understanding of his rights and a course of
conduct indicating waiver." 441 U.S. at 373,
99 S. Ct. 1755. The Court in Butler therefore
"retreated" from the "language and tenor of
the Miranda opinion," which "suggested that
the Court would require that a waiver . . . be
'specifically made.'" Connecticut v. Barrett,
479 U.S. 523, 531–532, 107 S. Ct. 828, 93 L.
Ed. 2d 920 (1987) (Brennan, J., concurring in
judgment).

If the State establishes that a Miranda
warning was given and the accused made an
uncoerced statement, this showing, standing
alone, is insufficient to demonstrate "a valid
waiver" of Miranda rights. Miranda, supra at
475, 86 S. Ct. 1602. The prosecution must make
the additional showing that the accused
understood these rights. See Colorado v.
Spring, 479 U.S. 564, 573–575, 107 S. Ct. 851,
93 L. Ed. 2d 954 (1987); Barrett, supra at
530, 107 S. Ct. 828; Burbine, 475 U.S. at 421–
422, 106 S. Ct. 1135. Cf. Tague v. Louisiana,
444 U.S. 469, 469, 471, 100 S. Ct. 652, 62 L.
Ed. 2d 622 (1980) (per curiam) (no evidence
that accused understood his Miranda rights);
Carnley v. Cochran, 369 U.S. 506, 516, 82 S.
Ct. 884, 8 L. Ed. 2d 70 (1962) (government
could not show that accused "understandingly"
waived his right to counsel in light of
"silent record"). Where the prosecution shows
that a Miranda warning was given and that it
was understood by the accused, an accused's
uncoerced statement establishes an implied
waiver of the right to remain silent.

Although Miranda imposes on the police a rule
that is both formalistic and practical when it
prevents them from interrogating suspects
without first providing them with a Miranda
warning, see Burbine, 475 U.S. at 427, 106 S.
Ct. 1135, it does not impose a formalistic
waiver procedure that a suspect must follow to
relinquish those rights. As a general

proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford. See, e.g., Butler, *supra* at 372-376, 99 S. Ct. 1755; Connelly, *supra* at 169-170, 107 S. Ct. 515 ("There is obviously no reason to require more in the way of a 'voluntariness' inquiry in the Miranda waiver context than in the [due process] confession context"). The Court's cases have recognized that a waiver of Miranda rights need only meet the standard of Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). See Butler, supra at 374-375, 99 S. Ct. 1755; Miranda, supra at 475-476, 86 S. Ct. 1602 (applying Zerbst standard of intentional relinquishment of a known right). As Butler recognized, 441 U.S. at 375-376, 99 S. Ct. 1755, Miranda rights can therefore be waived through means less formal than a typical waiver on the record in a courtroom, cf. Fed. R. Crim. P. 11, given the practical constraints and necessities of interrogation and the fact that Miranda's main protection lies in advising defendants of their rights, see Davis, 512 U.S. at 460, 114 S. Ct. 2350; Burbine, 475 U.S. at 427, 106 S. Ct. 1135.

Berghuis v. Thompkins, 560 U.S. 370, 382-85 (2010). Applying these principles, the Supreme Court found there was a valid waiver of Miranda rights.

There is no basis in this case to conclude that he did not understand his rights; and on these facts it follows that he chose not to invoke or rely on those rights when he did speak. First, there is no contention that Thompkins did not understand his rights; and from this it follows that he knew what he gave up when he spoke. See id., at 421, 106 S. Ct. 1135. There was more than enough evidence in the record to conclude that Thompkins understood his Miranda rights.

> . . . .
>
> Second, Thompkins' answer to Detective
> Helgert's question about whether Thompkins
> prayed to God for forgiveness for shooting the
> victim is a "course of conduct indicating
> waiver" of the right to remain silent. <u>Butler</u>,
> <u>supra</u> at 373, 99 S. Ct. 1755. If Thompkins
> wanted to remain silent, he could have said
> nothing in response to Helgert's questions, or
> he could have unambiguously invoked his
> <u>Miranda</u> rights and ended the interrogation.
> The fact that Thompkins made a statement about
> three hours after receiving a <u>Miranda</u> warning
> does not overcome the fact that he engaged in
> a course of conduct indicating waiver. Police
> are not required to rewarn suspects from time
> to time. Thompkins' answer to Helgert's
> question about praying to God for forgiveness
> for shooting the victim was sufficient to show
> a course of conduct indicating waiver. This is
> confirmed by the fact that before then
> Thompkins had given sporadic answers to
> questions throughout the interrogation.
>
> Third, there is no evidence that Thompkins'
> statement was coerced. <u>See</u> <u>Burbine</u>, <u>supra</u> at
> 421, 106 S. Ct. 1135.
>
> . . . .
>
> In these circumstances, Thompkins knowingly
> and voluntarily made a statement to police, so
> he waived his right to remain silent.

<u>Berghuis</u>, 560 U.S. at 385–87.

Here, the state trial court found that Elkins "knowingly and intelligently waived his privilege against self-incrimination and the right to counsel, and chose to speak to the detectives at the LCSO headquarters." (Doc. #2-4, p. 3.) The state court further found that petitioner's statement was reliable and untainted by the "prior un-warned statements in the patrol car during transport,

leading questions by the Detectives at the LCSO headquarters, [Elkin's] mental health, or intoxication." (Id.)  The state court was not persuaded by the testimony of Dr. Alan J. Waldman and other evidence that Elkins' statements were involuntary or unreliable due to the "reported prior brain injury and drug use".[5]  (Id.) The state court specifically found that Elkins' statements were free of coercion or deception.

As to the second prong, the state court did not add an improper reliability factor, but noted that Dr. Waldman's testimony did not support a finding that Elkins was not aware of his rights and the consequences of abandoning them.[6]  Elkins answered questions in a lucid manner, even if he said several times he forgot details.  Dr. Waldman's testimony was not supported by any physical evidence or statement by Elkins that he was intoxicated during the interview, and the decision was not contrary to or based on unreasonable determination of the facts in light of the evidence presented.  The state court considered the "totality

---

[5] Dr. Waldman noted that the mild head injuries could cause problems with some abstract reasoning but that he did not "think that it was particularly apparent that he would have those problems from the head injuries."  (Doc. #2-1, Exh. 1, pp. 64-65.)

[6] Dr. Waldman expressed concern about whether Elkins could knowingly and intelligently waive his Miranda rights, but did not unequivocally opine that he could not.  (Doc. #2-1, Exh. 1, pp. 68-69.)  On cross-examination, Dr. Waldman also agreed that any memory issues didn't necessarily mean that Elkins couldn't understand questions, including a Miranda warning.  (Id., pp. 74-75.)

of the circumstances" surrounding Elkin's statements and found his statements and <u>Miranda</u> waiver to be freely and voluntarily given.

The Court finds Elkins has not demonstrated that state court's adjudication of this claim was contrary to clearly established federal law, or based upon an unreasonable determination of the facts. The Petition is denied. 28 U.S.C. § 2254(d).

**V.   Certificate of Appealability**

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," <u>Miller–El v. Cockrell</u>, 537 U.S. 322, 335–36 (2003) (citations omitted). Petitioner has not made the requisite showing here and may not have a certificate of appealability on either ground of his Petition.

Accordingly, it is hereby

**ORDERED:**

1. Petitioner's Petition for Writ of Habeas Corpus By a Person in State Custody Under 28 USC § 2254 (Doc. #1) is **DENIED.**

2. The Clerk shall enter judgment, terminate all deadlines and motions, and close the case.

**DONE and ORDERED** at Fort Myers, Florida, this ___24th___ day of November 2020.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record